# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-3639

———————————————

Stuart Wright

*Plaintiff - Appellee*

v.

United States of America; John Clark; Walter R. Bradley, in his official capacity
as the United States Marshal for the District of Kansas; Stacia A. Hylton, in her
official capacity

*Defendant*s

Sean Franklin, in his official capacity as a Deputy United States Marshal and in
his individual capacity; Christopher Wallace, in his official capacity as a Deputy
United States Marshal and in his individual capacity

*Defendants - Appellants*

——————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————

Submitted: November 19, 2013
Filed: November 29, 2013
[Unpublished]

——————

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

——————

PER CURIAM.

Stuart Wright sued Deputy United States Marshals Sean Franklin and Christopher Wallace (the Marshals) seeking damages pursuant to Bivens.[1] The Marshals moved for summary judgment based on qualified immunity, and the district court denied their motion. The Marshals bring this interlocutory appeal.[2] We decline to address this appeal's merits and remand the case so that the district court can properly address the Marshals' qualified-immunity defense and make findings of fact and conclusions of law sufficient to permit appellate review.

The Marshals arrested Wright while he was playing basketball at a gym in Grandview, Missouri. The Marshals mistook Wright to be Vinol Wilson, a federal fugitive, who, months earlier, was indicted for drug trafficking. To apprehend Wright, the Marshals rushed onto the basketball court, and as Wright backed away from the Marshals, the Marshals tased him and took him to the floor. The Marshals then escorted Wright into the parking lot, interrogated him for approximately twenty minutes, and released him after discovering that Wright was in fact not Wilson.

Wright sued the Marshals, along with other defendants not involved in this appeal, for their roles in his arrest. Wright alleged that the Marshals' false arrest, improper search and seizure, and use of excessive force violated his Fourth and Fifth Amendment rights. The Marshals asserted qualified immunity. The district court began its qualified-immunity analysis by detailing the conflicting testimony each party presented. After noting the parties' differing versions of the events, the district

---

[1]Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

[2]We have jurisdiction under the collateral-order doctrine to hear an interlocutory appeal of the district court's denial of qualified immunity. See Robbins v. Becker, 715 F.3d 691, 693 (8th Cir. 2013).

court denied qualified immunity as to each claim, because there remained genuine issues of material fact as to whether the Marshals acted reasonably in their arrest of Wright, their post-arrest conduct, and their use of force. The Marshals appeal the district court's denial of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity provides "'*immunity from suit* rather than a mere defense to liability.'" Robbins v. Becker, 715 F.3d 691, 693 (8th Cir. 2013) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Baker v. McCollan, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.").

Against this backdrop, the Marshals present a strong case for reversal. It is uncontroverted that earlier in the day Wilson's former basketball teammate advised the Marshals that Wilson was scheduled to play basketball in the gym the evening of Wright's arrest. Further, moments before the arrest an employee of the gym confirmed that Wilson was indeed inside the gym, on the court, and in an orange jersey with the number 23 on it, a jersey identical to the one worn by Wright. Finally, the Marshals knew that Wilson had been evading arrest on a multi-defendant drug-conspiracy indictment for over a year, was known to have access to firearms during his drug trafficking, and had been previously captured with loaded weapons and ammunition on or near his person.

A video of the arrest confirms that Wright did not drop to the floor as ordered by the Marshals and instead, retreated, attempted to evade the officers, and physically resisted their attempts to take him into custody. The Marshals tased Wright, quickly removed him from the gym, and, after verifying his identity, released Wright after a twenty-minute detention.

We decline to address the merits of the Marshals' qualified-immunity defense, however, because the district court failed to conduct a proper qualified-immunity analysis. A district court cannot, as it did here, merely note the existence of disputed facts and summarily decide that qualified immunity is inapplicable. See Robbins,715 F.3d at 694 (citing Handt v. Lynch, 681 F.3d 939, 944-45 (8th Cir. 2012)).

Instead, the district court must examine the record to determine which facts are genuinely disputed and view those facts in the light most favorable to the non-movant, "as long as those facts are not so blatantly contradicted by the record . . . that no reasonable jury could believe [them]." Jones v. McNeese, 675 F.3d 1158, 1161-62 (8th Cir. 2012) (alterations in original) (quoting O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 917 (8th Cir. 2007)). The district court need not accept the non-movant's version of the facts, for instance, when video evidence "conspicuously refutes and completely discredits" the non-movant's version. See Wallingford v. Olson, 592 F.3d 888, 892-93 (8th Cir. 2010). Once the district court has set out the proper facts, "[t]hen, the court should determine if those facts demonstrate a [1] constitutional violation that is [2] clearly established." Handt v. Lynch, 681 F.3d 939, 945 (8th Cir. 2012).

We have recently instructed the district court to aid effective interlocutory review of the qualified-immunity issue by entering "findings of fact and conclusions of law . . . sufficient to permit our court (1) to determine what facts the district court assumed, in the light most favorable to the nonmoving party, and (2) to evaluate the

district court's individualized legal analysis." <u>Robbins</u>, 715 F.3d at 694. The district court did not comply with this requirement.

Accordingly, we vacate the order and remand this matter to the district court for further consideration consistent with this opinion.

_____