# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1969

_____

| | |
|---|---|
| John W. Walker, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| City of Pine Bluff, et al., | * |
| | * |
| Defendants - Appellants. | * |

_____

Submitted: January 14, 2005
Filed: July 21, 2005

_____

Before LOKEN, Chief Judge, HANSEN and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

LOKEN, Chief Judge.

When John W. Walker, an African-American civil rights attorney, stopped to watch a traffic stop of young black men being conducted by white Pine Bluff police officers, Officer Terry Grace arrested Walker for obstructing governmental operations in violation of section 5-54-102(a)(1) of the Arkansas Code. Walker filed this action under 42 U.S.C. § 1983 against Grace and the City, claiming that the arrest violated his constitutional rights and that the City failed to train and supervise its police officers "to refrain from engaging in racially selective and racially discriminatory

encounters with the African-American public." After the district court[1] permitted Walker to amend his complaint to assert a claim against Grace in his individual capacity, Grace moved for summary judgment on the basis of qualified immunity. The district court denied the motion on the ground that material facts are in dispute. Grace and the City appeal the interlocutory order denying qualified immunity and urge us also to review the interlocutory order granting Walker leave to amend the complaint. We affirm the denial of qualified immunity and conclude that we lack jurisdiction to consider the other order.

## I.

A district court's pretrial denial of qualified immunity is an interlocutory order, but it is immediately appealable under the collateral order doctrine "to the extent that it turns on an issue of law." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Thus, our appellate jurisdiction is limited to "determin[ing] whether all of the conduct that the district court 'deemed sufficiently supported for purposes of summary judgment' violated the plaintiff's clearly established federal rights." Lockridge v. Bd. of Trustees of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc), quoting Behrens v. Pelletier, 516 U.S. 299, 313 (1996). When the district court has denied qualified immunity on the ground that material facts are disputed, as in this case, we may not review the sufficiency of any evidence that is disputed. Instead, we view the facts in the light most favorable to plaintiff and determine whether those facts establish that defendant infringed plaintiff's clearly established constitutional or statutory rights. See Heidemann v. Rother, 84 F.3d 1021, 1027 (8th Cir. 1996).

Grace is entitled to qualified immunity unless he violated a clearly established right of which a reasonable person would have known. Harlow v. Fitzgerald, 457

---

[1]The HONORABLE WILLIAM R. WILSON, United States District Judge for the Eastern District of Arkansas.

U.S. 800, 818-19 (1982). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotation omitted). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986). Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim "is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996).

At his deposition, Walker testified that he was driving his van through Pine Bluff, accompanied by his daughter and two grandchildren, when he saw two white police officers standing with two young black men near a car in a driveway. Walker parked his van behind one police car and walked across the street to observe the encounter. Walker stood with his arms folded some forty to fifty feet from the conversation between the police and the young men. Walker could not hear what was being said, nor did he speak to anyone. One officer, Grace's back-up, Stephanie Sheets, approached Walker and asked if she could help him. Walker said no. Sheets asked what he was doing. Walker responded with a smile that he was watching "Pine Bluff's finest in action." Sheets went back and appeared to say something to the other officer, Grace, who broke off his conversation with the young men and came over to ask Walker what he was doing. Walker repeated that he was watching "Pine Bluff's finest in action." Grace stepped away, appeared to say something to Sheets, and then returned and asked Walker who he was. Walker asked if he had committed a crime. Grace asked again who he was. Walker identified himself as a lawyer and carefully got out his driver's license and offered it to Grace. Grace instead handcuffed Walker, picked up Walker's license which had fallen to the ground, and put Walker in the back of Grace's hot police car for some twenty minutes. After

-3-

finally letting the young men go, Grace drove Walker at varying speeds over dark wooded roads to the police station, looking at Walker's license for the first time during the drive while Walker's daughter tried to follow in his van.

Grace disputes some aspects of Walker's testimony (primarily by asserting that he did not arrest Walker until Walker refused Grace's command to move to where he would not be directly behind Grace as he talked to the young men, because that posed a safety concern, an assertion Walker denies). But counsel for Grace and the City acknowledge that we must accept Walker's testimony as true for purposes of this interlocutory qualified immunity appeal. Thus, the issue, as appellants acknowledge, is whether Grace had arguable probable cause to arrest Walker for obstructing governmental operations because Walker distracted officers who were conducting a traffic stop by silently watching the encounter from across the street with his arms folded in a disapproving manner.

In a democracy, public officials have no general privilege to avoid publicity and embarrassment by preventing public scrutiny of their actions. To take an obvious example, a highway road crew might like to arrest a frustrated motorist who parked his car and watched as the crew took an unauthorized three-hour lunch break, but such an arrest would be a flagrant abuse of government power. The issue is often more complex when police officers are engaged in public law enforcement activities, because some on-lookers may create safety hazards, while others may seek to frustrate valid law enforcement, as was the case in <u>Lawyer v. City of Council Bluffs</u>, 361 F.3d 1099, 1107 (8th Cir. 2004), and the cases we surveyed in that opinion. But public police activity invariably draws a crowd of interested but benign on-lookers. In this case, Grace and Walker both testified that a number of people came out of nearby residences to observe the traffic stop from a distance. Thus, the assertion that one more silent, non-interfering on-looker -- Walker -- created a distraction that prevented Grace and Sheets from safely completing the traffic stop is, in a word, preposterous.

-4-

Grace and the City argue that Grace did not violate clearly established law because at the time there were no reported judicial decisions construing the Arkansas statute. The statute provided that "a person commits the offense of obstructing governmental operations if he . . . [k]nowingly obstructs, impairs, or hinders the performance of any governmental function." Ark. Code Ann. § 5-54-102(a)(1) (Michie 1997). In close qualified immunity cases, the absence of judicial guidance can be significant because "[p]olice officers are not expected to parse code language as though they were participating in a law school seminar." Lawyer, 361 F.3d at 1108. But crediting Walker's testimony, as we must, we have a case of a citizen who was arrested when he stood at a considerable distance from police officers engaged in a conversation with young men, who spoke only when spoken to, and who complied with Grace's request for identification after pointing out that he had done nothing wrong. No reasonable police officer could believe that he had arguable probable cause to arrest such an on-looker in this situation, for obstruction of governmental operations or for any other purported crime. Thus, on this summary judgment record, the district court properly denied Grace's motion for qualified immunity protection. See Saucier v. Katz, 533 U.S. 194, 202 (2001).

## II.

Grace also argues that the district court abused its discretion in allowing Walker to amend his complaint to add a claim against Grace in his individual capacity. We have no jurisdiction over this non-final order unless it is "inextricably intertwined" with the issue of qualified immunity, that is, unless its review is "necessary to ensure meaningful review" of the qualified immunity issue. See Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 394 (8th Cir. 1995). Grace argues the issues are inextricably intertwined because qualified immunity only protects public officials from individual liability and therefore only became an issue when leave to amend the complaint was granted. This contention is without merit. As our discussion in Part I makes clear, we need not review the question whether the district

court abused its discretion in allowing Walker to amend his complaint in order to review the denial of qualified immunity.  Thus, we have no jurisdiction to review the district court's order dated December 30, 2003.  Appellate review of that order must await the district court's entry of a final decision appealable under 28 U.S.C. § 1291.

Part I.A. of the district court's order dated March 23, 2004 (the only portion of that order at issue on appeal) is affirmed.

———————————————