# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2983
_____

Edward Paul Chevallier

*Plaintiff - Appellee*

v.

Deputy Sheriff Joel Hand, Carroll County Deputy Sheriff, in his individual capacity

*Defendant - Appellant*

Deputy Sheriff Billy Floyd, Carroll County Deputy Sheriff, in his individual capacity

*Defendant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison
_____

Submitted: March 13, 2013
Filed: July 18, 2013
_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.
_____

SMITH, Circuit Judge.

Deputy Sheriff Joel Hand arrested Edward Paul Chevallier after responding to a report of disorderly conduct and a possible assault. The prosecutor later dismissed

the charges against Chevallier, and Chevallier filed suit against Deputy Hand and another officer, alleging excessive force and false arrest under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Deputy Hand moved for partial summary judgment on the false arrest claim, asserting the defense of qualified immunity. The district court found that Deputy Hand failed to meet his burden of proving probable cause and denied the motion. Deputy Hand filed an interlocutory appeal, and upon review, we reverse.

## I. *Background*

Chevallier owns and operates the Blue John's Trailer Park located in Berryville, Arkansas. Chevallier's tenants do not enter into formal written lease agreements for a term. Rather, the tenants pay rent to Chevallier on a month-to-month basis. Dan Rice lives in a trailer located inside the trailer park but does not pay rent to Chevallier. Rice leases a trailer from Jeff Micheletto, a tenant of Chevallier. Micheletto, in turn, pays rent to Chevallier for the trailer's space in the park.

The Carroll County, Arkansas Sheriff's office dispatched Deputy Hand to Rice's residence to handle a reported altercation between Chevallier and Rice. The dispute arose on Rice's subleased trailer space when Chevallier told Rice that he had to move out of the trailer. After his arrival, Deputy Hand, aware that Rice leased the trailer from Micheletto, warned Chevallier that he would arrest him for criminal trespass if he contacted Rice again. No legal action ensued. Several days later, someone from Rice's residence called authorities to report that "Chevallier was . . . taunting [Rice] and trying to get him into a fight." Once again, Deputy Hand was dispatched to Rice's residence. Deputy Sheriff Billy Floyd also responded to the report. Upon arrival, Deputy Hand observed Chevallier driving a four-wheeler away from Rice's property. Because the property lines were unmarked, Deputy Hand was unable to determine with certainty whether Chevallier was on the lot of Rice's leased trailer.

Deputy Hand spoke with Rice, who related that Chevallier "kept taunting him" and that "Chevallier wanted to fight him." The deputies then went to Chevallier's residence. They found Chevallier outside on his front porch. Chevallier admitted that he had been over to talk to Rice again, despite Deputy Hand's warning given at the first incident. Deputy Hand told Chevallier that he was under arrest and ordered him to place his hands behind his back. Chevallier refused to comply, and Deputy Hand sprayed him with pepper spray. The deputies placed Chevallier on the ground, handcuffed him, and transported him to the police station. Deputy Hand stated in deposition testimony that he arrested Chevallier for the crimes of criminal trespass and disorderly conduct. The prosecutor subsequently dismissed the charges.

Chevallier filed suit against Deputies Hand and Floyd, asserting claims of excessive force and false arrest under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. In response, Deputies Hand and Floyd asserted qualified immunity. Deputies Hand and Floyd filed a motion for partial summary judgment on Chevallier's false arrest claim, as well as a motion to dismiss Deputy Floyd as a defendant. The court granted the motion to dismiss Deputy Floyd as a defendant. However, in response to the motion for partial summary judgment, the court issued an order noting that Hand "did not personally observe [Chevallier] committing an underlying crime." *Chevallier v. Hand*, 884 F. Supp. 2d 807, 810 (W.D. Ark. 2012). The court then reasoned:

> Judging only by what Defendant personally observed and by his evaluation of the statements and credibility of the alleged victim, the Court concludes that it is not clear if a person of reasonable caution would have believed that [Chevallier] committed a crime. It is also not clear, from the facts alleged, that the alleged victim's statement to [Deputy Hand] was reasonably trustworthy. Moreover, no other witnesses or physical evidence existed to corroborate the alleged victim's account, and [Deputy Hand] himself was not a witness to any crime, even criminal trespass, by his own admission. Corroboration of an alleged victim's account is not a prerequisite to establishing probable

cause; but in the instant circumstances, the lack of any corroboration strikes the Court as an imprudent basis upon which to execute a warrantless arrest, absent any exigent circumstances or evidence of bodily harm to the alleged victim or others. The Supreme Court has held that "even in making a warrantless arrest an officer 'may rely upon information received through an informant, rather than upon his direct observations, *so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.*'" *Illinois v. Gates*, 462 U.S. 213, 242, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (emphasis added) (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960)). Here, the only apparent corroboration within [Deputy Hand's] knowledge was his observation of [Chevallier] on his four-wheeler, driving away from the direction of [Rice's] residence.

*Id.* at 811. The district court rested its decision that "[Deputy Hand] ha[d] failed to meet his burden of proof" on this analysis, and it "decline[d] to dismiss [Chevallier's] false arrest . . . claim[] on the grounds of qualified immunity." *Id.*

## II. *Discussion*

On this interlocutory appeal, Deputy Hand argues that the district court erred in denying his motion for partial summary judgment on his qualified immunity defense against Chevallier's false arrest claim.

We review *de novo* a district court's denial of a motion for summary judgment based on qualified immunity. *Akins v. Epperly*, 588 F.3d 1178, 1182 (8th Cir. 2009). "We view the facts in the light most favorable to the plaintiff, accepting as true the facts that the district court found were adequately supported, as well as the facts the district court likely assumed." *Brown* [*v. City of Golden Valley*], 574 F.3d [491,] 496 [(8th Cir. 2009)].

*Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013).

The Fourth Amendment, as applied to the States through the Fourteenth Amendment, requires that an officer have probable cause before making a warrantless arrest. *Stufflebeam v. Harris,* 521 F.3d 884, 886 (8th Cir. 2008). Probable cause exists when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime. *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949); *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010).

*Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (quotation omitted). . . . Because the qualified immunity privilege extends to a police officer who is wrong, so long as he is reasonable, the governing standard for a Fourth Amendment unlawful arrest claim "is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

*Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (second alteration in original).

For his first argument Deputy Hand contends that the district court effectively imposed a novel requirement that an officer may conduct a warrantless arrest for a misdemeanor offense only if that offense took place in the presence of the officer. Deputy Hand argues that such a requirement was not clearly established at the time of Chevallier's arrest. We have stated that

the prevailing view is that the Constitution does not require that a misdemeanor offense must have occurred in the officer's presence to

justify a warrantless arrest, *see, e.g.*, *Woods* [*v. City of Chicago*], 234 F.3d [979,] 995 [(7th Cir. 2000)], and neither the Supreme Court nor this court has decided the question, so any "in the presence" requirement is far from clearly established.

*Veatch*, 627 F.3d at 1259. The district court's order acknowledged that "an 'in the presence' requirement for a warrantless police arrest on a misdemeanor offense 'is far from clearly established.'" *Chevallier*, 884 F. Supp. 2d at 810. We do not read the district court's order to require what this court and the Supreme Court have not required, i.e., that a warrantless arrest is only permitted when the offense is committed in the officer's presence. We therefore find no merit in Deputy Hand's first argument. The court went on, however, to state that "the question of whether [Deputy Hand] is entitled to qualified immunity for his actions depends on a probable cause analysis. If [Deputy Hand] had probable cause to arrest, under the circumstances, his actions would receive qualified immunity." *Id.* This brings us to Deputy Hand's second argument.

Deputy Hand argues that the district court erred in analyzing his claim as if the governing standard for a Fourth Amendment unlawful arrest claim were probable cause *in fact*, as opposed to the correct standard, *arguable* probable cause. We agree. "An officer . . . is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least 'arguable probable cause.'" *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)).

At the time of Chevallier's arrest, Deputy Hand knew of the altercation between Chevallier and Rice that had taken place on Rice's lot several days before and of his warning to Chevallier not to contact Rice again. He knew that he had been dispatched to Rice's residence again in response to a report of "[d]isorderly conduct or a possible assault." Deputy Hand knew that he had observed Chevallier driving a four-wheeler

-6-

away from Rice's trailer. He knew of Rice's statement that Chevallier "kept taunting him" and that Chevallier "wanted to fight him." Further, he knew, according to the district court's recitation of undisputed facts, that Chevallier admitted "that he had contact with the alleged victim and had 'been over there,' presumably to the alleged victim's property or thereabouts." *Chevallier*, 884 F. Supp. 2d at 811.

Deputy Hand stated in deposition testimony that he arrested Chevallier for criminal trespass and disorderly conduct. Under Arkansas law, "a person commits criminal trespass if he or she purposely enters . . . unlawfully in or upon: . . . [t]he premises of another person." Ark. Code Ann. § 5-39-203(a)(2). Viewing the facts in the light most favorable to Chevallier, we hold that it is "arguable" that Deputy Hand "ha[d] reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that [Chevallier] ha[d] committed . . . [the] crime" of criminal trespass. *See Veatch*, 627 F.3d at 1257 (citing *Brinegar*, 338 U.S. at 175; *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010)). Chevallier's admission sufficiently corroborated Rice's statement to establish arguable probable cause when coupled with the history of animosity between Chevallier and Rice and Deputy Hand's observation of Chevallier on the four-wheeler. Consequently, Deputy Hand met his burden of showing arguable probable cause, and he is entitled to qualified immunity with respect to Chevallier's false arrest claim.

## III. *Conclusion*

Accordingly, we reverse the order of the district court and remand with instructions to enter an order granting Deputy Hand's motion for partial summary judgment.

_____